IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. 4:10-CV-729 |
| | § | |
| ALLIANCE RESIDENTIAL MANAGEMENT, L.L.C., et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court[1] are Defendant Alliance Resident Management, L.L.C.'s Motion to Compel Arbitration and to Stay Proceedings (Docket Entry No. 19) and Defendant Westcorp Management Group One, Inc.'s Motion to Compel Arbitration and to Stay Proceedings (Docket Entry No. 20).

The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant Alliance Resident Management, L.L.C.'s Motion to Compel Arbitration and to Stay Proceedings (Docket Entry No. 19) and **GRANTS** Defendant Westcorp Management Group One, Inc.'s Motion to Compel Arbitration and to Stay Proceedings (Docket Entry No. 20).

**I. Case Background**

Plaintiff Lexington Insurance Company ("Plaintiff") initiated

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry Nos. 30-32.

this action against defendants Alliance Residential Management, L.L.C. ("Alliance") and Westcorp Management Group One, Inc., ("Westcorp") (collectively, "Defendants") on March 5, 2010, pursuant to the court's diversity jurisdiction.[2]

Plaintiff seeks declaratory relief with respect to three separate insurance policies it issued to Alliance. Plaintiff generically calls these policies "Policy A," "Policy B," and "Policy C."[3] Although the language between the policies varied somewhat, each covered bodily injury and property damage liability occurring during the policy period at certain locations covered by and specified within each policy.[4] Plaintiff asserts that Alliance breached its contractual obligations by failing to defend, settle, or pay judgments in suits against it which fell within the Self-Insured Retentions ("SIRs")[5] that applied to the relevant policies.[6] Plaintiff further asserts that, as a result of the alleged

---

[2] Original Complaint, Docket Entry No. 1. At that time, Plaintiff also filed against EMI ARM Manager, L.L.C., who has since been terminated from the suit, on September 1, 2010.

[3] Second Amended Complaint, Docket Entry No. 11, ¶¶ XI, XIX, XXVII. The policy number for Policy A is 6359150. Plaintiff's First Supplemental and Amended Complaint for Declaratory Judgment ("First Amended Complaint"), Docket Entry No. 5, Ex. B, Policy A, p. 1. The policy number for Policy B is 6762172. Id. at Ex. E, Policy B, p. 1. The policy number for Policy C is 0355758. Second Amended Complaint, Docket Entry No. 11, Ex. A, Policy C, p. 1.

[4] Second Amended Complaint, Docket Entry No. 11, ¶¶ XI, XIX, XXVII.

[5] A SIR is the amount that Alliance would be maximally responsible for as a result of any judgment against it. The policies at issue insured for the amount of any judgment that was in excess of the respective SIR stated in each policy. The SIR for Policy A was $300,000; the SIR for Policy B was $100,000; and the SIR for Policy C was $30,000. Second Amended Complaint, Docket Entry No. 11, ¶ V.

[6] Id. ¶ XXXV.

breaches, it was exposed to liability in excess of the SIRs and was forced to pay defense costs that it did not contract to pay.[7] Plaintiff therefore seeks to recover those payments along with declarations that it has no further obligations with respect to the underlying suits.[8]

Westcorp is a named defendant in this suit solely with respect to Policy C.[9]  On August 11, 2008, Trevor Lavergne ("Lavergne"), a minor child, drowned in a pool at the Somerset Place Apartment complex in Houston, Texas.[10]  This complex was owned or maintained by Alliance, but, at some unspecified time, Westcorp took over the maintenance responsibilities and/or ownership of the complex from Alliance.[11]  Lavergne's parents filed a lawsuit against Alliance and

---

[7] Id. ¶ XXXVI.

[8] Id.  Specifically, Plaintiff requests five types of declaratory relief: (1) "to the extent that a judgment is rendered against Alliance in [any of the underlying lawsuits, Plaintiff] has no obligation to pay any part of that judgment that is within the applicable [SIR] for that lawsuit . . . ;" (2) "Alliance's failure to pay its legal expenses for the defense of the [underlying lawsuits] is a breach of its contractual obligations under Policies A, B and C, which absolves [Plaintiff] of its obligations to perform its duties under Policies A, B and C;" (3) "should [Plaintiff] choose to pay any settlement in the [underlying lawsuits] that is within the applicable SIR on Alliance's behalf, [Plaintiff] does not waive any of its rights under Policies A, B and C by doing so, including its right to recover the entire amount of any payment from [Defendants];" (4) "if Alliance continues to disregard [Plaintiff's] instructions to settle the [underlying lawsuits] for amounts within the applicable SIR and a judgment is entered in any of the . . . cases against Alliance for greater than the applicable SIR, that [Plaintiff's] liability is limited to what it would have had under the recommended settlement amount;" and, in the alternative, (5) "Alliance's failure to cooperate with [Plaintiff] to settle the claims in the [underlying lawsuits] constitutes a breach of Alliance's contractual obligations under Policies A, B and C, which absolves [Plaintiff] of its obligations to perform its duties under Policies A, B and C."  Second Amended Complaint, Docket Entry No. 11, ¶¶ LXVI, LXXXIII, LXXXVI, LXXXIX, XCIII.

[9] Id. ¶¶ LXX, LXXI.

[10] Id. ¶ LXVI.

[11] Id. ¶¶ LXVII, LXVIII.

3

Westcorp for negligence.[12]

Plaintiff complains that Alliance is unable to fund its SIR responsibilities under Policy C with respect to the Lavergne lawsuit and has voiced an intention to allow the state court to enter a judgment against it in that case.[13] Plaintiff also states that Alliance's claimed inability to fund the SIR amount of $30,000 is adversely affecting the defense of the claims against Alliance and that Alliance is thus violating its obligations under Policy C.[14]

Plaintiff further alleges that Westcorp has assumed responsibility for the Somerset Place Apartment complex,[15] is therefore responsible for all claims against the complex (and not Alliance), has failed to defend Alliance in the lawsuit, and has failed to satisfy the SIR on Alliance's behalf.[16] Plaintiff seeks a declaration against Westcorp that, should Plaintiff pay any settlement in the Lavergne lawsuit on Alliance's behalf where the total settlement is less than the applicable SIR of $30,000, Plaintiff is entitled to recover the entire amount it paid from

---

[12]   Id. ¶ LXIX.

[13]   Id. ¶ LXX.

[14]   Id. ¶ LXXI.

[15]   Westcorp avers that, as property manager to the complex, it is an additional insured under Policy C. Westcorp's Motion to Compel, Docket Entry No. 20, pp. 5, 12-14; see Second Amended Complaint, Docket Entry No. 11, Ex. A, Policy C, § II.2.b. (stating that any organization acting as a real estate manager to the insured signatory is also insured under the policy).

[16]   Id. ¶ LXXIII.

Alliance or Westcorp.[17]

## II. <u>Motions to Compel Arbitration</u>

Defendants seek a court order staying proceedings and compelling Plaintiff's claims to arbitration pursuant to the arbitration provisions in the three insurance policies at issue.[18] Plaintiff argues in response that the court should not compel arbitration because: (1) "the whole premise of [Plaintiff's] suit is rooted in the argument that the policies at issue are void because of the insured's affirmative misrepresentations and have been invalidated by the Defendants' nonperformance," and "[a] dispute over the validity or rescission of the policies is clearly excluded from the arbitration clauses;" (2) "[Plaintiff] seeks to recover damages from the Defendants," and "[t]hose claims do not purely involve interpretation of the policy language and, therefore, are not subject to arbitration;" and (3) "there is no evidence that Westcorp is an insured under any of the insurance policies at issue," and "[a]s such, Westcorp has no standing to demand arbitration in this case."[19]

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving

---

[17] Second Amended Complaint, Docket Entry No. 11, ¶ XCIV(2).

[18] Alliance's Motion to Compel, Docket Entry No. 19; Westcorp's Motion to Compel, Docket Entry No. 20.

[19] Plaintiff's Memorandum in Opposition to Defendants' Motions to Compel Arbitration and to Stay Proceedings ("Plaintiff's Response"), Docket Entry No. 23, pp. 1-2.

commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Courts perform a two-step inquiry when determining whether to compel a party to arbitrate: (1) whether the parties agreed to arbitrate, and (2) whether federal statute or policy renders the claims nonarbitrable. Dealer Computer Servs., Inc. v. Old Colony Motors, Inc., 588 F.3d 884, 886 (5th Cir. 2009). Plaintiff does not argue that any federal statute or policy renders its claims nonarbitrable, and thus the court need only address the first inquiry of the test.

**A.   Alliance's Motion to Compel Arbitration**

The first inquiry in determining whether to compel a party to arbitrate has two parts: (1) whether a valid agreement to arbitrate exists, and (2) whether the dispute falls within that agreement. Dealer Computer Servs., 588 F.3d at 886. "Beyond this analysis, the courts generally do not delve further into the substance of the parties' disputes." Id. at 886-87. The parties do not dispute that valid agreements to arbitrate exist in the three contracts.[20]

However, Plaintiff argues that the dispute does not fall within the scope of the agreements because: (1) two of the policies (Policy B and Policy C) exclude from arbitration determinations whether the insurance contracts as a whole are void or voidable,

---

[20]   As the court discusses infra, Plaintiff argues that the contracts as a whole may be invalid, but not the arbitration clauses in particular.

and (2) questions of performance, rather than pure contract interpretation, dominate this lawsuit, and thus Plaintiff's claims are unarbitrable.

### a. Whether the Policies Are Void or Voidable

Plaintiff argues that the insurance contracts are void or subject to rescission, i.e., voidable, as a result of Defendants' alleged nonperformance and fraudulent misrepresentations.[21]

Normally, in deciding a motion to compel arbitration, the court may only determine challenges with respect to: (1) the validity of the arbitration provision itself, and (2) the existence, as opposed to the validity, of the contract; the court may not decide arguments with respect to the validity of the contract as a whole. See <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 446 (2006) (dividing the contract-as-a-whole analysis

---

[21] Plaintiff's Response, Docket Entry No. 23, p. 5. Plaintiff argues that Defendants' fraudulent misrepresentations of financial solvency induced Plaintiff into issuing the insurance policies. Plaintiff states that Alliance knew it did not have the financial resources to fund the SIRs at the time the contracts were agreed to and that its misrepresentations to the contrary went directly to the heart of the agreement between the parties, i.e., the allocation of risk between Plaintiff and Alliance, thus rendering the policies void or voidable.
   In determining whether the arbitration agreement covers Plaintiff's claims, a court must "focus on the complaint's factual allegations rather than the legal causes of action asserted" to determine whether an existing arbitration agreement covers a party's claims. <u>In re FirstMerit Bank, N.A.</u>, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding).
   Here, Plaintiff disingenuously states that its "claims in the Complaints for Declaratory Judgment and amendments ask this Court to void the policies based on Alliance's misrepresentations . . . ." Yet, Plaintiff does not mention in its complaint any variation of "fraud" or "misrepresentation" in its facts, claims, or requests for relief. There is not a trace of any allegation or claim within Plaintiff's second amended complaint that Alliance fraudulently entered into contracts with Plaintiff by any misrepresentation. See Fed. R. Civ. P. 9(b) (stating that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake").
   Fraudulent misrepresentation is simply not an issue that is before the court, and, thus, the court will not address it.

between formation defenses and all other defenses); see also Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 219 (5th Cir. 2003) (stating that "where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute").  Thus, usually, only if an arbitration clause is deemed invalid by the court may the court then resolve the validity of the entire contract.

Here, however, Policy B and Policy C have identical arbitration clauses, which read in relevant part: ". . . in the event of a disagreement as to the interpretation of this policy (except with regard to whether this policy is void or voidable), it is mutually agreed that such dispute shall be submitted to binding arbitration . . . as the sole and exclusive remedy."[22]  Thus, the court must first determine whether the issues in this suit involve whether the policies are void or voidable.[23]  See Volt Info. Scis. Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 668 (1989) (stating that the federal policy underlying the FAA "is simply to ensure the enforceability, according to their terms, of

---

[22] Id. Ex. E, Policy B, p. 31 ¶ 16; Second Amended Complaint, Docket Entry No. 11, Ex. A, Policy C, p. 10 ¶ 16.  The relevant portion in the arbitration clause of Policy A provides: ". . . in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration . . . as the sole and exclusive remedy."  First Amended Complaint, Docket Entry No. 5, Ex. B, Policy A, p. 30 ¶ 16. As Defendants point out, Policy A does not contain the exception language that Policy B and Policy C both have, that determinations of whether the policies are void or voidable are not subject to arbitrability.  Thus, at the outset, Plaintiff's argument fails with respect to Policy A.

[23] The court is not here deciding whether the policies are actually void or voidable, only whether those issues are now before the court based on Plaintiff's second amended complaint.

private agreements to arbitrate").

Plaintiff's muddled argument appears to argue that the contracts are void or voidable based on Alliance's nonperformance. The FAA embodies a policy guaranteeing enforcement of private contractual arrangements and requires a court to look "to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." Will-Drill Res., 352 F.3d at 214. Ordinary contract principles are used in determining whether an agreement to arbitrate a particular issue exists.[24]  Id.  However, "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." Volt Info Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 475-76 (1989).

A "void" contract is one that is a "without vitality or legal effect." Poag v. Flories, 317 S.W.3d 820, 825 (Tex. App.—Fort Worth 2010, pet. filed) (citing Slaughter v. Qualls, 162 S.W.2d 671, 674 (Tex. 1942)).  In other words, the "transaction is absolutely a nullity, as if it had never existed, incapable of giving rise to any rights or obligations under any circumstances." Mr. W Fireworks, Inc. v. Ozuna, No. 04-08-00820-CV, 2009 WL 3464856, at *6 (Tex. App.—San Antonio Oct. 28, 2009, pet. denied) (unpublished) (citing Ewell v. Daggs, 108 U.S. 143, 148-49 (1883)).

---

[24]  The parties agree that Texas law applies to determine whether a contract was formed in this case.  Alliance's Motion to Compel, Docket Entry No. 19, p. 4 & n.1; Westcorp's Motion to Compel, Docket Entry No. 20, p. 7 & n.1; Plaintiff's Response, Docket Entry No. 23, p. 5 ¶ 13.

For example, if a contract violates public policy, it is void. Lawrence v. CDB Servs., Inc., 44 S.W.3d 544, 555 (Tex. 2001). "When a contract is void, neither party is bound thereby." In re Mabray, 2010 WL 3448198, at *19. Neither estoppel nor ratification can make a void contract enforceable. Id.

On the other hand, a "voidable" contract is one that is merely capable of being avoided, i.e., that at the option of one of the parties to the contract may be avoided, but need not be. Mr. W Fireworks, Inc., 2009 WL 3464856, at *6 (citing Ewell, 108 U.S. at 149)). For example, contracts obtained by fraud or mutual mistake are voidable rather than void, and thus remain effective until set aside. Poag, 317 S.W.3d at 826 (citing Nobles v. Marcus, 533 S.W.2d 923, 926 (Tex. 1976); Williams v. Glash, 789 S.W.2d 261, 264 (Tex. 1990)).

In its discussion of the various underlying lawsuits against Alliance, Plaintiff in its second amended complaint repeatedly states:

> Alliance's failure to meet its financial obligations under [the policy], and specifically its failure to pay the legal defense fees incurred on its behalf and satisfy the SIR in settlement of the [underlying lawsuit], is adversely affecting the defense of the claims against Alliance. As such, Alliance's actions violate its obligations under the SIR and void coverage under the Policy as respects the [underlying lawsuit].[25]

Nowhere else in its complaint does Plaintiff reference either

---

[25] Second Amended Complaint, Docket Entry No. 11, ¶¶ XLVII, LIV, LXI, LVIII, LXV, LXXI.

"void" or "voidable."

Plaintiff's argument appears to have shifted between the filing of its suit and responding to this motion, because Plaintiff now appears to argue that Alliance's alleged nonperformance voids the contracts rather than excuses Plaintiff's obligations under the contracts under the typical breach of contract scenario. Not only is simple nonperformance not a ground for making a contract void or voidable; nonperformance is an element of a breach of contract claim under Texas law:

> Insurance policies are contracts and, as such, are controlled by rules that are applicable to contracts generally. In Texas, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by one party; (3) nonperformance of the contract by the other party; and (4) damages incurred as a result. If one party to a contract commits a material breach, the other party may be discharged or excused from any obligation to perform.

<u>Watson v. Allstate Tex. Lloyd's</u>, 224 Fed. App'x 335, 339 (5th Cir. Mar. 29, 2007) (unpublished) (internal quotations and citations omitted). Thus, Plaintiff's argument that nonperformance is a ground for rendering the contracts void or voidable is incorrect as a matter of law; at most, Plaintiff may be excused from performing, but contracts are not simply rendered void by the nonperformance of a signatory.

Therefore, the court finds that all of Plaintiff's arguments, whether direct or indirect, with respect to the continued validity or enforcement of the contracts, are without merit. Simply put,

Plaintiff claims that Alliance failed to perform its obligations under the contracts with respect to the SIRs, thereby breaching each.[26] The court finds that Plaintiff's allegations do not raise the "void" or "voidable" exception to arbitration but rather allege routine breach of contract claims that must be arbitrated. Accordingly, Plaintiff's arguments to the contrary fail.

### b. Interpretation Versus Performance

Plaintiff also argues that its claims do not fall within the scope of the agreements to arbitrate because they do not involve claims of pure contract interpretation but, rather, involve factual claims of how and whether Alliance has performed.

Plaintiff's argument is without merit. To determine whether Alliance's performance or nonperformance breached the contracts, the contracts must be examined and interpreted to determine precisely what Alliance's obligations were. Plaintiff's present lawsuit involves the allocation of defense costs incurred by Alliance in a number of underlying lawsuits. This means that the rights and duties of each party must be determined before a determination can be made whether Alliance breached the contracts, and, typically, arbitrators resolve disputed facts. Thus, Plaintiff's claims fall within the scope of the arbitration provisions and therefore must be arbitrated.

Accordingly, Alliance's motion to compel arbitration is

---

[26] Plaintiff's Response, Docket Entry No. 23, p. 5.

**GRANTED**.

**B.    Westcorp's Motion to Compel Arbitration**

Plaintiff has also brought suit against Westcorp, which has claimed to be an additional insured under Policy C.[27] Plaintiff argues that the claims against Westcorp are not arbitrable because Westcorp was not a party to the agreement. Defendants Alliance and Westcorp argue that Westcorp, a non-signatory to any of the three insurance contracts, can compel arbitration under an equitable estoppel theory because this action against Westcorp is intertwined with, and dependent upon, the Policy C contract.[28]

Equitable estoppel permits a nonsignatory to an arbitration clause to compel arbitration against a signatory "when the signatory . . . raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Griffin v. ABN Amro Mortg. Grp. Inc., No. 09-60164, 2010 WL 1976575, at *1 (5th Cir. May 17, 2010) (unpublished) (citing Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir. 2000)). In its decision permitting a nonsignatory to compel arbitration in some situations,

---

[27]   Westcorp avers that, as property manager to the complex, it is an additional insured under Policy C. Westcorp's Motion to Compel, Docket Entry No. 20, pp. 5, 12-14; see Second Amended Complaint, Docket Entry No. 11, Ex. A, Policy C, § II.2.b. (stating that any organization acting as a real estate manager to the insured signatory is also insured under the policy).

[28]   Policy C was the policy at issue in the Lavergne lawsuit, the only underlying lawsuit in which Westcorp was involved. Second Amended Complaint, Docket Entry No. 11, ¶¶ LXX-LXXI.

the Fifth Circuit approvingly quoted the Eleventh Circuit's application of equitable estoppel under an intertwined-claims theory:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

Grigson, 210 F.3d at 527 (emphasis omitted) (citing MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)).

Here, the circumstances of the case warrant application of the equitable estoppel doctrine under both situations described in Grigson. First, Plaintiff, a signatory to the contract, is relying on the terms of the agreement in asserting its claims against Westcorp.[29] Second, Plaintiff's claims against Alliance and Westcorp are substantially interdependent, as they all relate to Plaintiff's and Defendants' obligations under the terms of the

---

[29] "Westcorp has failed to defend Alliance against the Lavergne Lawsuit or to satisfy the SIR on Alliance's behalf." Second Amended Complaint, Docket Entry No. 11, ¶ LXXIII.

insurance policies with respect to the <u>Lavergne</u> lawsuit.[30] These issues go to the heart of Plaintiff's claims, that is, who had what duties pursuant to the insurance contracts. Thus, equitable estoppel permits this court to compel Plaintiff to arbitrate its disputes against Westcorp.[31]

Accordingly, Westcorp's motion to compel arbitration is **GRANTED**.

Because the court is granting Defendants' motions to compel arbitration, the court also **GRANTS** Defendants' request for a stay of this litigation pending the outcome of the arbitration. <u>See</u> 9 U.S.C. § 3.[32] Therefore, the court **ORDERS** an immediate stay of this litigation pending the outcome of arbitration proceedings between Plaintiff and Defendants.

### III. <u>Conclusion</u>

---

[30] "Upon Lexington's information and belief, Westcorp assumed the responsibility for the maintenance and/or ownership of the Somerset Place Apartment complex and is now responsible for all claims against the Somerset Place Apartment complex, not Alliance." <u>Id.</u> ¶ LXXII.

[31] The court does not here reach the issue of whether Westcorp is an additional insured, because it finds that, even were it not, equitable estoppel requires Plaintiff's claims against Westcorp to be arbitrated.

[32] 9 U.S.C. § 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Based on the foregoing, the court **GRANTS** Defendant Alliance Resident Management, L.L.C.'s Motion to Compel Arbitration and to Stay Proceedings (Docket Entry No. 19) and **GRANTS** Defendant Westcorp Management Group One, Inc.'s Motion to Compel Arbitration and to Stay Proceedings (Docket Entry No. 20).

Arbitration must be initiated by the parties within thirty (30) days of the date this order is received.

**SIGNED** in Houston, Texas, this 20th day of October, 2010.

Nancy K. Johnson
United States Magistrate Judge